UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RICKIE LEE JOHNS,

                    Petitioner,                 Case No. 1:18-cv-954

v.                                         Honorable Paul L. Maloney

TONY TRIERWEILER,

                    Respondent.

_____/

**<u>REPORT AND RECOMMENDATION</u>**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Rickie Lee Johns is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility in Ionia, Michigan. On January 20, 2016, Petitioner pled *nolo contendere* in the Wexford County Circuit Court in two different criminal prosecutions. In Case No. 2016-11536-FH, Petitioner entered his plea to attempted third-degree criminal sexual conduct (CSC-III), and in Case No. 2015-11325-FC, Petitioner entered his plea to first-degree criminal sexual conduct (CSC-I). On February 22, 2016, the court sentenced Petitioner to concurrent prison terms of one year, eleven months to five years for CSC-III and fifteen to thirty years for CSC-I.

Petitioner, with the assistance of his appointed appellate counsel, moved to withdraw his plea.  Petitioner claimed his plea was involuntary and that the lifetime electronic monitoring imposed as a direct consequence of his CSC-I conviction was cruel and unusual.  The trial court denied the motion.  Petitioner then applied for leave to appeal his convictions in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders entered October 14, 2016, and June 27, 2017, respectively.  On August 27, 2018, Petitioner timely filed his habeas corpus petition raising the same issues he raised in the Michigan appellate courts: (1) involuntary plea; and (2) cruel and unusual sentence (lifetime electronic monitoring).  (Pet., ECF No. 1, PageID.4-6.)

Respondent has filed an answer to the petition (ECF No. 9), stating that the grounds should be denied because they lack merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

Although Respondent has submitted all of the trial court transcripts as well as Petitioner's appellate filings, the facts underlying Petitioner's criminal prosecutions remain somewhat of a mystery.  At the time Petitioner entered his pleas, the Wexford County Prosecuting Attorney was prosecuting Petitioner in three criminal cases: the two cases referenced above and Case No. 2016-11537-FH.  (Plea Hr'g Tr., ECF No. 10-5, PageID.106-109.)  It appears that each case related to a different victim.  In

2

addition, it appears that the Missaukee County Prosecuting Attorney was considering a felony complaint against Petitioner for acts of criminal sexual conduct against one of the Wexford County victims that occurred in Missaukee County. (*Id.*; Pet'r's First Supplement, ECF No. 8.)

In Case No. 2015-11325-FC, Petitioner was charged with eight counts of CSC-I, three counts of CSC-II, one count of child sexually-abusive activity, and one count of prostitution of a minor. (Wexford Cty. Cir. Ct. Docket Sheet, ECF No. 10-1, PageID.78.) In Case No. 2016-11536-FH, Petitioner was charged with two counts of completed CSC-III and one count of attempted CSC-III. (Wexford Cty. Cir. Ct. Docket Sheet, ECF No. 10-2, PageID.86.)

The victim in the CSC-I case became pregnant. Based on genetic material collected from the fetus, the victim, and Petitioner, the Michigan State Police Laboratory determined that it was 19.56 trillion times more likely that Petitioner was the biological parent than an untested randomly selected individual in the Caucasian population who was unrelated to Petitioner. (Lab. Report, ECF No. 8-1, PageID.35-36.) Even in the face of the lab report, Petitioner continued to insist on his innocence. Counsel, accordingly, obtained the trial court's permission to obtain a DNA expert for Petitioner. (Mot. Hr'g Tr., ECF No. 10-4.) Petitioner's expert's report supported the conclusions of the Michigan State Police lab. (Plea Hr'g Tr., ECF No. 10-5, PageID.119-121.)

The plea bargain called for Petitioner to enter a plea of *nolo contendere*[1] to one of the CSC-I counts and the CSC-III attempt count.  (*Id.*, PageID.107-109.)  All of the remaining charges would be dismissed—including two CSC-I counts that carried mandatory statutory minimum sentences of 25 years—and the Missaukee County prosecution would be dropped.  (*Id.*)  The trial court carefully reviewed with Petitioner the charges to which he would enter his plea and the charges that would be dropped.  (*Id.*, PageID.110-115.)  With respect to each charge, the court specifically explained to Petitioner the maximum sentence he would face.  With respect to the two charges to which Petitioner would plead, the court explained the CSC-I charge carried a potential sentence of life imprisonment and lifetime electronic monitoring and the attempted CSC-III charge carried a maximum sentence of five years.

In reviewing the terms of the agreement, the court never mentioned any agreement regarding Petitioner's sentence.  Neither Petitioner's counsel nor the prosecutor indicated that the plea agreement included any term regarding

---

[1] In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea.  Claims or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*.  Hence, we hold that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty.  Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted).

4

Petitioner's sentence.   When the trial court asked Petitioner if there were any additional promises upon which the plea was based, Petitioner responded: "No."  (Plea Hr'g Tr., ECF No. 10-5, PageID.115.)

The court also specifically informed Petitioner that he would be giving up the right to have any trial and referred Petitioner to the "Advice of Rights" forms he had filed in each case that detailed the rights Petitioner would lose by giving up his right to trial.  (*Id.*, PageID.116-118.)   Petitioner indicated that his counsel had also reviewed with Petitioner the rights he was yielding, that Petitioner understood those rights, and that Petitioner had no questions regarding the rights he was giving up. (*Id.*)

Petitioner's Presentence Investigation Report is not part of the record. Nonetheless, it appears that the court's minimum sentences were at the very top of the advisory sentencing guidelines minimum ranges.  (Sentencing Hr'g Tr., ECF No. 10-6, PageID.137.)

## II.   AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).   An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Involuntary plea

Petitioner contends that the trial court should have permitted him to withdraw his plea.  A state defendant has no constitutionally guaranteed right to withdraw a guilty plea.  *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969).  A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas.  *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991).  Consequently, the question whether Petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.

Petitioner also claims that his plea was not knowingly and voluntarily entered into.  *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").  Petitioner offers several different arguments to support his claim.

In the state trial court, Petitioner claimed that he did not understand what "lifetime monitoring" meant and that he wanted to pursue further discovery because he believed he had "sufficient defenses."  (Mot. Hr'g Tr., ECF No. 10-7, PageID.142-143.)  Additionally, Petitioner claimed that his trial counsel failed to advise him about

the possibility of withdrawing his plea, the consequence of lifetime monitoring, or the fact that the Missaukee County prosecution would be dropped. (*Id.*, PageID.145.)

On appeal, Petitioner offered additional reasons. He claimed that he was confused and that he had not been informed that he had the right to retain an attorney. (Pet'r's Appl. for Leave to Appeal, ECF No. 10-8, PageID.169.) Petitioner also claimed his attorney unduly influenced Petitioner to enter a plea. (*Id.*)

In the petition, Petitioner offers three new reasons his plea was involuntary: (1) he did not understand what it meant to waive his right to trial; (2) "they" tampered with his DNA; and (3) counsel told Petitioner he would receive a sentence of seven years, but the sentence minimum imposed was fifteen years.[2] (Pet., ECF No. 1, PageID.5.)

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid

---

[2] Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Petitioner has never fairly presented these three particular claims to the state courts at any level. Although the habeas statute prevents the Court from granting habeas relief on an unexhausted claim, 28 U.S.C. § 2254(b)(1), the Court may still deny relief on such a claim, 28 U.S.C. § 2254(b)(2).

look to "all of the relevant circumstances surrounding it[.]" *Brady v. United States*, 397 U.S. 742, 749 (1970).

In order to find a guilty plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t

may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).  Ineffective assistance of counsel will render a plea of guilty involuntary.  *See Hill*, 474 U.S. at 56-57.

### A.     Claims waived by Petitioner's plea

An unconditional plea constitutes a waiver of all pre-plea non-jurisdictional constitutional deprivations.  *Tollett*, 411 U.S. at 267.  "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *Tollett*, 411 U.S. at 267.[3]  Claims waived by a plea include claims of ineffective assistance of counsel that do not relate to the voluntariness of the plea. *See Rice v. Olson*, No. 16-1125, 2016 WL 3877866, at *2 (6th Cir. July 15, 2016) (citing *United States v. Stiger*, 20 F. App'x 307, 308-09 (6th Cir. 2001)).

---

[3] A *nolo contendere* plea stands on equal footing with a guilty plea in this respect.  *See United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982) ("Like a plea of guilty, a plea of nolo contendere constitutes a waiver of all so-called 'non-jurisdictional defects' or, more accurately, any claims not logically inconsistent with the issue of factual guilt, as well as the right to contest the factual merits of the charges against him.").

Petitioner's claims based on failures during discovery, "sufficient defenses," and the DNA testing results are claims related to the merits of the charges against him.  Those claims are waived by his plea.  Moreover, they are waived even if Petitioner raises the claims as instances of ineffective assistance of counsel.

To call into question the validity of a plea, claims of ineffective assistance of counsel must attack the voluntary or intelligent nature of the plea by showing that counsel's advice was inadequate with respect to the plea.  Petitioner's "merits" based ineffective assistance claims instead relate to alleged attorney failures that occurred before and separate from the plea negotiations.  Petitioner's claims therefore have been waived by his subsequent plea.  *See Stiger*, 20 F. App'x at 308-09; *see also Parisi v. United States*, 529 F.3d 134, 138-39 (2d Cir. 2008) (claims of ineffective assistance with respect to matters preceding the plea agreement are waived by a guilty plea); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (guilty plea waives claims concerning pre-plea ineffective assistance of counsel); *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived).

### B.    Claims belied by the plea colloquy

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of

12

correctness attaches to the state court findings of fact and to the judgment itself.  *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings.  *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Under settled Sixth Circuit authority, a petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a later assertion that he was unaware of the consequences of his plea or that there was a specific sentence agreement as part of his plea bargain.  In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms.  The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry."  781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)).  The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement, if it consists of "secret terms known only to the parties."  *Id.* at 90.  The court again addressed this issue in *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), also a § 2255 case.  In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would

be sentenced to probation if he pled guilty.  The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement.  982 F.2d at 1026.  Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing.  Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy.

Petitioner's claims that he was unaware of the consequence of lifetime electronic monitoring, unaware that the Missaukee County prosecution would be dropped, and unaware of what it meant to give up his right to trial, are directly contrary to his admissions during the plea hearing.  The court specifically advised Petitioner that his plea would subject him to lifetime electronic monitoring—and Petitioner acknowledged that he understood.  (Plea Hr'g Tr., ECF No. 10-5, PageID.110.)  The court specifically advised Petitioner that the Missaukee County prosecution would be dropped—and Petitioner acknowledged that he understood. (*Id.*, PageID.114-115.)  The court specifically referred Petitioner to the "Advice of Rights" form that Petitioner had signed, a form that detailed the trial rights Petitioner would be waiving with his plea: to be tried by a jury; to be presumed innocent; to have the prosecutor prove Petitioner's guilt beyond a reasonable doubt; to confront witnesses; to compel defense witnesses to appear; to remain silent; to not have silence held against Petitioner; and to testify.  (*Id.*, PageID.116-118; Wexford

14

Cty. Cir. Ct. Docket Sheets, ECF Nos. 10-1, 10-2.)  *See also* Mich. Ct. Rule 6.302(B)(3); Advice of Rights, available at https://courts.michigan.gov/Administration/SCAO/Forms/courtforms/cc291.pdf (visited August 25, 2019).  Petitioner acknowledged his signature on the form and acknowledged that counsel had read the form to him.  (Plea Hr'g Tr., ECF No. 10-5, PageID.116-118.)  Petitioner then stated that he understood the rights he was waiving.  (*Id*.)  Petitioner is bound by his statements.

Similarly, Petitioner's new contention that he was promised a seven-year sentence is entirely inconsistent with his statements that he understood he might receive a sentence of life imprisonment.  (*Id*., PageID.110.)  And, after the trial court reviewed all of the terms of the bargain—terms that very obviously did not include a seven-year sentence—Petitioner said there were no other terms of the plea agreement.  (*Id*., PageID.115.)  Again, Petitioner is bound by his statements.  The thorough plea colloquy forecloses these claims.

### C.    Ineffective assistance of counsel

Petitioner contends that his counsel rendered ineffective assistance in several respects: counsel failed to advise Petitioner that he could move to withdraw his plea; counsel unduly influenced Petitioner to enter a plea; counsel failed to advise Petitioner of the consequence of lifetime monitoring; and counsel failed to advise Petitioner that the Missaukee County prosecution would be dropped.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  The petitioner must prove:    (1) that counsel's performance fell below an objective standard of

reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill*, 474 U.S. at 58.  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id*. at 59.

As noted above, there is no constitutional right to withdraw a plea.  *Carwile*, 874 F.2d at 382.  Petitioner's claimed right to withdraw a plea arises under state law.  *See, e.g.*, Mich. Ct. Rule 6.310.  The state trial court rejected  as meritless Petitioner's state law claim that he was entitled to withdraw his plea.  (Mot. Hr'g Tr., ECF No. 10-7.)  The Michigan Court of Appeals likewise concluded that the claim lacked merit.  (Mich. Ct. App. Order, ECF No. 10-8, PageID.161.)

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  Accordingly, the state court's rejection of Petitioner's claim as meritless under state law binds this Court.

The Sixth Circuit has held that "'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)); *see also Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Failing to advise a client that he might pursue a meritless claim is no more professionally unreasonable or prejudicial than is failing to raise such a claim.

Whether or not counsel advised Petitioner that his plea would result in lifetime electronic monitoring or the dropping of the Missaukee County charges, Petitioner cannot demonstrate any prejudice. The court corrected any possible misperception counsel created by failing to inform Petitioner. If Petitioner entered that hearing believing he would not be subject to lifetime electronic monitoring or that the Missaukee County prosecution would survive his plea, the court disabused Petitioner of those beliefs at the hearing. Petitioner cannot, therefore, show prejudice. He knew the true state of affairs at the hearing and entered his plea anyway.[4]

Petitioner's claim that counsel unduly influenced his decision to enter a plea fares no better. No matter how strongly counsel encouraged Petitioner to enter his plea, Petitioner cannot demonstrate that such encouragement was professionally unreasonable. The trial court concluded that counsel's advice to Petitioner that

---

[4] Moreover, it is difficult to conceive of any prejudice Petitioner would have suffered even if the trial court had ***not*** informed Petitioner that the Missaukee County prosecution would be dropped.

Petitioner did not have any chance to prevail at trial was "good advice."  (Mot. Hr'g

Tr., ECF No. 10-7, PageID.157.)  The court explained:

> [Petitioner] could have denied that he was the father of the child and
> denied that he engaged in sexual activity with the victim, and frankly,
> a jury would have been overwhelmed by the persuasive evidence from
> the DNA test.  Also, I note the Court reviewed the documents to support
> the plea[—the police reports—] and [Petitioner] made admissions that
> would have been used against him and would have been very damaging
> to him.  Frankly, he received a prison sentence in this case which was
> substantial . . . .  However, that prison sentence is remarkably less than
> the sentence that he would have received had he gone to trial and been
> convicted of count number one.

(*Id.*, PageID.157-158.)    Additionally,  Petitioner  faced  multiple  counts  with  the

potential for consecutive sentencing in just that case, not to mention the other cases

with other victims and other potentially consecutive sentences.  The trial court's

determination that counsel's advice encouraging Petitioner to enter a plea was sound

is  reasonable  on  this  record  and  is  neither  contrary  to,  nor  an  unreasonable

application of, the clearly established federal law set forth in *Strickland*.

### D.    Misunderstanding the nature of lifetime electronic monitoring

Finally, Petitioner argues that his plea was unknowing because, even if he was

informed of lifetime electronic monitoring as a consequence of is plea, he did not

understand what it meant.  In *People v. Cole*, 817 N.W.2d 497 (Mich. 2012), the

Michigan Supreme Court held that "mandatory lifetime electronic monitoring is a

direct consequence of a plea."  *Id*. at 503.  As a result, the supreme court determined

that "due process requires the trial court to inform the defendant entering the plea

that he or she will be subject to mandatory lifetime electronic monitoring."  *Id*.  Under

Michigan statute, lifetime electronic monitoring must "[b]y electronic means, track

the movement and location of each individual from the time the individual is released on parole or from prison until the time of the individual's death."  Mich. Comp. Laws § 791.285.

The words "lifetime electronic monitoring" more than adequately convey the nature of the consequence.  To the extent Petitioner expected "lifetime electronic monitoring" to consist of a consequence that is somehow "lesser" than the consequence as defined by Michigan statute, that expectation appears to be the product of some entirely subjective misunderstanding.  Such subjective misunderstandings have been routinely rejected as grounds to invalidate a guilty plea.  *See Marks v. Davis,* 504 F. App'x 383, 385-86 (6th Cir. 2012) (based on plea colloquy, court rejected petitioner's claim of misunderstanding that the calculated minimum range under Michigan's sentencing guidelines was actually the minimum and maximum sentence); *McAdoo*, 365 F.3d at 487 (court rejected petitioner's claim that subjective misunderstanding regarding meaning of life sentence versus parolable life sentence rendered plea involuntary); *Nichols v. Perini*, 818 F.2d 554, 558 (6th Cir. 1987) (court held that where sentence was longer than that expected based on petitioner's subjective belief regarding likely sentence, even when that belief is prompted by counsel's "guesstimate," there was no procedural or constitutional defect); *United States ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1098 (2d Cir. 1972) ("[A] defendant's mistaken subjective impressions gained from conferences with his legal counsel, in the absence of substantial objective proof showing that they were

20

reasonably justified, do not provide sufficient grounds upon which to set aside his guilty plea.").

Petitioner does not explain how the words failed to convey the nature of the consequence or how the words caused him to misunderstand the consequence such that he was willing to enter a plea when, if he had actually understood their meaning, he would not have been willing to enter a plea.  On the state court record, the state trial court's determination that Petitioner understood the consequences of his plea is reasonable.  Moreover, Petitioner has failed to show that the court's determination is contrary to, or an unreasonable application of, clearly established federal law.

For all of these reasons, Petitioner is not entitled to habeas relief on the claim that his plea was involuntary or unknowing.

## IV. Lifetime electronic monitoring as cruel and unusual punishment

Petitioner contends that lifetime electronic monitoring rises to the level of cruel and unusual punishment and, thus, violates the Eighth Amendment.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).

The Sixth Circuit considered a claim that lifetime electronic monitoring was cruel and unusual punishment in an order denying a certificate of appealability in *Noonan v. Burton*, No. 17-2458, 2018 WL 6584905 (6th Cir. Oct. 15, 2018):

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital cases.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (plurality opinion) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring)). "The Eighth Amendment, however, does not mandate strict proportionality between crime and sentence; instead, at most, only sentences that are 'grossly disproportionate' to the crime are prohibited." *United States v. Navarro*, 350 F.3d 551, 554 (6th Cir. 2003) (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring)). In *Harmelin*, "the controlling opinion . . . upheld Michigan's penalty of a mandatory life sentence without the possibility of parole for possession of more than 650 grams of cocaine, even though the defendant had no prior felony convictions." *United States v. Jones*, 569 F.3d 569, 573 (6th Cir. 2009) (citing *Harmelin*, 501 U.S. at 1009 (Kennedy, J., concurring)). As one court has explained, "[i]f life imprisonment without any possibility of parole for a non-violent offense is not cruel and unusual punishment, lifetime electronic monitoring for the violent crime of criminal sexual conduct is not cruel and unusual punishment." *Smith v. Bauman*, No. 5:10-cv-11052, 2018 WL 1399312, at *5 (E.D. Mich. Mar. 19, 2018).

*Noonan*, 2018 WL 6584905, at *3.

The Michigan Court of Appeals rejected as meritless Petitioner's Eighth Amendment challenge to lifetime electronic monitoring as a cruel and unusual punishment for first-degree CSC. (Mich. Ct. App. Order, ECF No. 10-8, PageID.161.) To prevail on his habeas challenge, Petitioner must demonstrate that the state court's determination is contrary to, or inconsistent with, clearly established federal law. The Supreme Court has never held that lifetime electronic monitoring is cruel and unusual punishment.[5]

---

[5] Although not directly applicable, decisions upholding monitoring requirements for sex-offenders against *ex post facto* challenges, *see e.g., Smith v. Doe*, 538 U.S. 84 (2003); *Doe v. Bredesen*, 507 F.3d 998 (6th Cir. 2007), indicate that the courts do not view monitoring as unduly punitive.

It would seem anomalous to hold that it is ***not*** barbarous to imprison a person for the rest of their lives, as the Michigan CSC-I statute permits, Mich. Comp. Laws § 750.520b, but that it is barbarous to let them out after a term of years subject to electronic monitoring. Monitoring seems to be a significantly lesser punishment than imprisonment. But, even if the punishments were equivalent, Petitioner does not identify any clearly established federal law to support his position that lifetime electronic monitoring is cruel and unusual. Accordingly, he is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by

23

demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Accordingly, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:  September 3, 2019                    /s/ Phillip J. Green
                                             PHILLIP J. GREEN
                                             United States Magistrate Judge

## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).